UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ALTAGRACIA GOMEZ,

        Plaintiff,

vs.

RENT-A-CENTER, INC., JOHN DOES #1-10, ABC ENTITIES #1-10,

        Defendants.

Civ. No. 2:18-cv-1528-KM-SCM

OPINION

### KEVIN MCNULTY, U.S.D.J.:

Plaintiff Altagracia Gomez ("Ms. Gomez") sues her former employer, Rent-A-Center, Inc. ("Rent-A-Center"). She alleges that she was harassed and wrongfully terminated because of her race, national origin, disability, and status as a single mother—and also for reporting illegal conduct. Now before the court is Rent-A-Center's motion to dismiss and compel arbitration.

### I.    BACKGROUND[1]

Plaintiff Altagracia Gomez is a New Jersey resident who began working for defendant Rent-A-Center in 2002. (Compl. ¶¶ 1, 9). Ms. Gomez worked until 2013, when she was allegedly forced to resign because she was unable to work assigned hours and needed to take care of new newborn child. (Compl. ¶ 9).

Ms. Gomez reapplied to work at Rent-A-Center around April 2016. (Compl. ¶ 10). She was hired as an assistant manager around May 2016 in a Jersey City location. (Compl. ¶ 10). Rent-A-Center agreed that her work hours

---

[1]    All facts and inferences are made in favor of the nonmoving party on a motion to dismiss. Citations to the complaint (ECF No. 1-1) are abbreviated as "Compl."

1

would be from 9:00am to 5:30pm. (Compl. ¶ 11). This accommodation was provided to Ms. Gomez because she was a single mother and has medical needs related to iron deficiency, anemia, vitamin B12 deficiency, and thrombophilia. (Compl. ¶ 12). Her direct supervisor, Ms. Maribelle Esteves, was aware of this accommodation. (Compl. ¶ 12).

On June 2016, Ms. Gomez noticed that money was missing or unaccounted for from the register. (Compl. ¶ 14). She immediately reported the issue to Ms. Esteves. (Compl. ¶ 14). Ms. Esteves did not take corrective action and the issue continued into July 2016. (Compl. ¶¶ 15-16). Ms. Gomez reported her concern to the district manager, Mr. Alberto Ramos. (Compl. ¶ 16). However, Mr. Ramos did not take corrective action and told Ms. Gomez just to do her job. (Compl. ¶ 16).

Additionally, several managers or co-workers made racist comments and jokes regarding Ms. Gomez's Dominican ethnicity and accent. (Compl. ¶ 18). Rent-A-Center held a meeting to discuss this conduct toward Ms. Gomez on or about October 10, 2016. (Compl. ¶ 18).

Around November 2016, Ms. Esteves changed Ms. Gomez's hours and required her to work until 7:00pm on Mondays and Fridays. (Compl. ¶¶ 19-20). She was required to work those hours or would lose her job. (Compl. ¶ 20). This change interfered with Ms. Gomez obtaining care for her medical needs and her child. (Compl. ¶ 21). Ms. Gomez's medical conditions worsened; she was diagnosed with major depressive disorder in November 2016. (Compl. ¶ 23).

On December 8, 2016, Ms. Gomez allegedly witnessed Ms. Esteves and her son take two Xbox One video game consoles from Rent-A-Center without purchasing or renting the equipment. (Compl. ¶ 24). Ms. Gomez reported this to Mr. Ramos the same day but Mr. Ramos refused to take any action. (Compl. ¶ 24).

On December 10, 2016, Rent-A-Center terminated Ms. Gomez. (Compl. ¶ 25). Ms. Gomez alleges that this was done in retaliation for reporting Ms.

Esteves and as a result of her race, national origin, disability, and status as a single mother. (Compl. ¶ 26). She seeks damages for lost front and back pay, emotional distress, lost employment benefits, and an impaired reputation. (Compl. ¶ 27). Ms. Gomez asserts eight counts:

- **Count 1:** Violation of the Conscientious Employee Protection Act ("CEPA") – hostile work environment (Compl. ¶¶ 29-34)
- **Count 2:** Violation of CEPA – adverse employment actions (Compl. ¶¶ 35-40)
- **Count 3:** Violation of public policy per *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505 (N.J. 1980) (Compl. ¶¶ 41-44)
- **Count 4:** Violation of the New Jersey Law Against Discrimination ("NJLAD") – adverse employment action (Compl. ¶¶ 45-54)
- **Count 5:** Violation of NJLAD – failure to accommodate disability (Compl. ¶¶ 55-62)
- **Count 6:** Violation of NJLAD – harassment (Compl. ¶¶ 63-66)
- **Count 7:** Punitive damages (Compl. ¶¶ 67-71)
- **Count 8:** Respondeat superior liability (Compl. ¶¶ 72-78).

Ms. Gomez filed a case against Rent-A-Center in the Superior Court of New Jersey on November 17, 2017. (ECF No. 1). Rent-A-Center removed the case to this court on February 5, 2018. (ECF No. 1). Now before the court is Rent-A-Center's motion to dismiss and compel arbitration. (ECF No. 5).

Rent-A-Center argues that Ms. Gomez's claims are subject to arbitration. Rent-A-Center points to an alleged arbitration agreement that states, in relevant part:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, including without limitation, claims arising out of or related to my application for employment, assignment/employment, and/or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.

3

(ECF No. 5-1, ex. B). Ms. Gomez disputes the validity and enforceability of this purported agreement.

## II. DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, created a strong federal policy in favor of arbitration. It authorizes a party to enforce a valid arbitration agreement by moving to compel such arbitration. *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012). Arbitration, however, is a matter of contract between parties, so a judicial mandate to arbitrate must be predicated on the parties' consent. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). The court must be satisfied that the agreement to arbitrate is effective before compelling arbitration. *Id.*

Rent-A-Center argues that whether the arbitration clause controls *and* whether Ms. Gomez was subject to unlawful actions should be determined by an arbitrator. Ms. Gomez makes three arguments why these matters should not be referred to arbitration: (A) Ms. Gomez has no knowledge (i.e., does not remember) signing an arbitration agreement and Rent-A-Center has, allegedly, not established that the electronic signature is her signature; (B) Ms. Gomez did not understand that she was agreeing to arbitrate her claims and waive a jury trial; and (C) a federal court—not an arbitrator—should determine whether the arbitration agreement is valid and enforceable. (ECF No. 9, pp. 4-10).

### A. Knowledge of Agreement

Ms. Gomez claims no memory of signing the agreement. (ECF No. 9, pp. 2-3). She argues that Rent-A-Center "fails to set forth and confirm that th[e] electronic signature ... was entered by Ms. Gomez herself." (ECF No. 9, p. 5). She asserts that "[a]nyone could have typed Ms. Gomez's name into the 2016 Arbitration Agreement and Defendant has failed to prove that has not otherwise happened." (*Id.*).

4

Section 4 of the FAA sets forth the procedure when a court is presented with a petition to compel arbitration. That section provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. Although a party may demand a jury trial when issues respecting arbitrability are "in issue," 9 U.S.C. § 4, "[a] party resisting arbitration ... 'bears the burden of showing that he is entitled to a jury trial.'" *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) (citing *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992)). As when opposing a motion for summary judgment under Federal Rule of Civil Procedure 56, the party requesting a jury trial must "submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *see Stuart*, 85 F.3d at 983-84 (party must demonstrate a "genuine" issue); *see also Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 888-89 (6th Cir. 2002).

Ms. Gomez's Certification states that she does not remember signing the arbitration agreement, but that if she did, she did not understand she was giving up her right to a jury trial. ("Gomez Cert." ¶¶ 4–5, ECF no. 9-1) With respect to contractual disputes, federal courts have consistently held that a party's failure to recall a relevant event is insufficient to raise an issue as to the occurrence of that event. *See Batiste v. Island Records, Inc.*, 179 F.3d 217, 223 (5th Cir. 1999) (plaintiff's inability to remember signing contracts is insufficient to raise a material issue as to validity of the agreement); *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51, 55 (1st Cir. 1999) (plaintiff's failure to

5

remember receiving document not a specific fact to defeat summary judgment); *Posey v. Skyline Corp.*, 702 F.2d 102, 106 (7th Cir. 1983) (inability to recall is a "mere possibility" of a fact dispute and is insufficient basis to deny a motion for summary judgment).

Ms. Gomez argues that she may not have signed the agreement because there is an "electronic signature" and not a handwritten "signature." However, "an actual, handwritten signature is not necessary" and "a party may manifest assent to a contract by clicking a link on a website." *Forsyth v. First Trenton Indem. Co.*, No. L-9185-08, 2010 WL 2195996, at *6-7 (N.J. Super. Ct. App. Div. May 28, 2010); *Caspi v. Microsoft Network, L.L.C.*, 732 A.2d 528, 530 (N.J. Super. Ct. App. Div. 1999) (finding that a plaintiff accepted an online membership agreement, which contained a forum selection clause, where the agreement "appear[ed] on the computer screen in a scrollable window next to blocks providing the choices 'I Agree' and 'I Don't Agree.'"). The fact that this was an electronic rather than a physical signature does not create a genuine dispute of fact as to whether Ms. Gomez signed the agreement. *See Ricci*, 2015 WL 333312, at *4.

Ms. Gomez's attorney does not make any straightforward contention that Ms. Gomez did not sign, but merely argues that "anyone" could have affixed her electronic signature to the Arbitration Agreement. Rent-a-Center, however, has submitted uncontradicted evidence that ample safeguards were in place to prevent "anyone" from signing the Arbitration Agreement. As a newly rehired employee in 2016, Ms. Gomez signed an Electronic Signature Agreement. (Declaration of Mark Tuckey ("Tuckey Decl.") ¶¶ 5–6 & Ex. A, ECF no. 5-1) She does not deny signing this agreement in person. In it, she agrees that her electronic signature will be binding, and she sets up a unique and secret electronic signature password known only to her. And it was only by using that

password, which she agreed to keep secret, that her electronic signature could be affixed to the Arbitration Agreement. (*Id.* ¶ 6)[2]

The admissible evidence demonstrates that Ms. Gomez assented to the Arbitration Agreement. There is no genuine, material issue of fact requiring a jury trial, and her bare claim that she cannot remember signing is insufficient to create one.

### B. Understanding of Agreement

Ms. Gomez also argues that she was never properly apprised of her waiver of the right to a jury trial because the agreement was not clear. (ECF No. 9, pp. 7-8).

It is true that waivers of the right to a jury trial must be clear and unambiguous. *See Hemberger v. E\*Trade Fin. Corp.*, No. 7-cv-1621, 2007 WL 4166012, at \*3-5 (D.N.J. Nov. 19, 2007). This waiver, however, is clearly stated, in boldface, capital letters calculated to draw the reader's attention:

> **I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS; THAT I UNDERSTAND ITS TERMS; THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT; AND THAT I HAVE ENTERED INTO THE AGREEMENT NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT, I AM AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT.**

---

[2] Both the Electronic Signature Agreement and the Arbitration Agreement, by the way, were signed on May 3, 2016. And in connection with her prior employment stint, she physically signed a similar Arbitration Agreement. (*Id.* ¶ 7 & Ex. C) The parties seem to dispute whether that earlier agreement governed the later, 2016 period of employment, but that issue need not be reached unless the 2016 Arbitration Agreement is found invalid.

7

(ECF No. 1-1, p. 11). "It will not do for a [person] to enter into a contract, and, when called upon to respond to its obligations, to say that [she] did not read it when [she] signed it, or did not know what it contained." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)); *see also Sheet Metal Workers Int'l. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 673 F. Supp. 2d 313, 328 (D.N.J. 2009) ("Walking blindfolded through one's business affairs does not excuse the ensuing collision."). Courts excuse a party's failure to comprehend a contract's terms in rare cases only. *See, e.g., Morales*, 541 F.3d at 222 ("In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable.").

Here Ms. Gomez essentially asks for an exception to the rule of contract formation based on a general statement that she did not understand the contract. There is no claim of fraud, misrepresentation, or any other extenuating circumstance. *See Uddin v. Sears, Roebuck & Co.*, No. 13-cv-6504, 2014 WL 1310292, at *5 (D.N.J. Mar. 31, 2014).

I have already found that Ms. Gomez signed the Arbitration Agreement. It was her obligation to ensure that she understood the implications of the agreement before signing it. *See, e.g., Morales*, 541 F. 3d at 223. Accordingly, Rent-A-Center has met its burden of demonstrating that the parties formed an agreement to arbitrate. All other issues, as stated in the following section, are for the arbitrator to decide.

### C. Arbitrability of Other Enforceability Issues

For arbitration to occur, there must have been an arbitration agreement in the first place. I therefore considered as a threshold matter whether the parties had entered into the Arbitration Agreement, and concluded that they had. Further issues, even threshold issues as to the scope, validity, and enforceability of the agreement itself, are committed to the arbitrator.

8

The Arbitration Agreement between Rent-A-Center and Ms. Gomez provides for a broad delegation of all issues:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

(ECF No. 5-1, p. 9). That is a clear statement that the parties agreed to arbitrate all issues, including whether the Arbitration Agreement itself is enforceable.

There is no legal bar to such a broad delegation of authority to the arbitrator:

> [P]arties can agree to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.... This ... merely reflects the principle that arbitration is a matter of contract.... An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010) (internal citations omitted).

I have found that Ms. Gomez signed the agreement. Only if the broad delegation of issues to the arbitrator were invalid could she bar referral of those to arbitration. She has not shown that the agreement's delegation of all remaining issues, even so-called "gateway" ones, is invalid. Her remaining issues, then, must be decided in the arbitration:

> As the Supreme Court stressed in *Rent-A-Center*, "only [an arbitration provision-specific] challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." If the challenge encompasses the contract as a whole, the validity of that contract, like all other disputes arising under the contract, is a matter for the arbitrator to decide.

9

*S. Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 840 F.3d 138, 143 (3d Cir. 2016) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. at 70) (brackets in original; internal citation omitted)); *see also Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 229 (3d Cir. 2012) (when a plaintiff "challenge[s] only the validity of the contract as a whole rather than the validity of the delegation clause, ... in accordance with the valid delegation clause, questions of arbitrability (including the arbitrability of the overall agreement to arbitrate) must go to an arbitrator" (internal quotations omitted)).

Having found that the agreement was duly executed, I will compel arbitration of all remaining issues.

### III. CONCLUSION

For the foregoing reasons, Rent-A-Center's motion to compel arbitration of Ms. Gomez's claims is granted. This action is stayed pending the arbitrator's decision. An appropriate order accompanies this opinion.

Dated: July 10, 2018

**KEVIN MCNULTY**
**United States District Judge**

10